UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANIES, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-7 |
| | ) | |
| TENNESSEE LOG HOMES, INC., | ) | Judge Mattice |
| DENNIS SMITH, and LAURIE SMITH, | ) | |
| | ) | |
| *Defendants*. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Cincinnati Insurance Companies brings this declaratory judgment action against Defendants Tennessee Log Homes, Inc. ("TLH") and Dennis and Laurie Smith pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, seeking a declaration of its rights and duties under two insurance policies issued to TLH. TLH filed a counterclaim against Cincinnati Insurance Companies, seeking a declaration regarding Cincinnati Insurance Companies' liability under the policies.

Before the Court is Plaintiff's Motion for Summary Judgment [Court Doc. 27]. For the reasons explained below, Plaintiff's Motion for Summary Judgment will be **GRANTED**.

**I.** *GRAND TRUNK* **ANALYSIS**

As stated above, Plaintiff seeks a judgment in the instant action under the Declaratory Judgment Act. The Declaratory Judgment Act grants district courts discretionary jurisdiction over actions within its purview. 28 U.S.C. § 2201 (providing that a court "may declare the rights and other legal relations of any interested party seeking such declaration"). This statutory discretion is broad, but not unbounded. The Sixth Circuit

provides specific guidance to district courts faced with the decision of whether to entertain a declaratory judgment claim. District courts should consider the following:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata[";] (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

In this case, the *Grand Trunk* factors militate in favor of exercising jurisdiction. First, the declaratory action would settle the controversy between the Plaintiff and the Defendants. In instances where there is a pending underlying state court proceeding in which the insurer is not involved, the declaration of a federal court would not resolve any matter at issue in the underlying case, which weighs in favor of declining to exercise jurisdiction. *See U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 Fed. App'x 562, 564-65, 2006 WL 41185, at *3 (6th Cir. Jan. 6, 2006) (per curiam); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1990). In this instance, however, the underlying state court case is no longer pending, so a declaration in this case would settle the controversy.

Second, for similar reasons, a declaratory action would serve a useful purpose in clarifying the legal relations in issue. The legal relations among the Defendants have been clarified in the underlying state court action and all that remains is the question of indemnity. As a result, this declaratory action would serve to clarify the legal relations between the Plaintiff and Defendants. *Cf. U.S. Fire Ins. Co.*, 161 Fed. App'x at 565, 2006 WL 41185, at *3.

Third, there is no evidence to suggest that Plaintiff is seeking a procedural advantage or acting in bad faith.

Fourth, there is no possibility of friction between federal and state courts because there is no state court action pending. Further, the Circuit Court of Marinette County, Wisconsin has indicated that it is deferring to this federal court action. (Court Doc. 44-4 at 2.)

Fifth, although there is an alternative remedy – a declaratory action in the Circuit Court of Marinette County, Wisconsin, the court where the underlying case was litigated – and such alternative remedy is ordinarily considered preferable to a federal declaratory judgment action, *see Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986), the Wisconsin state court has indicated that it is deferring to the action pending in this Court. (Court Doc. 44-4 at 2.) As a result, the preferred remedy is not one that is open to the Plaintiff.

Accordingly, the Court concludes that the *Grand Trunk* factors, considered as a whole, weigh in favor of exercising jurisdiction over this case and jurisdiction over Plaintiff's declaratory judgment action is **ACCEPTED** under 28 U.S.C. § 2201.

## II. STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from

those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *National Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. BACKGROUND

### A. Facts

The relevant facts, viewed in the light most favorable to the nonmoving party, are as follows.

In August 2002, Dennis and Laurie Smith ("Smiths") filed suit against TLH, as well as several other defendants, in a Wisconsin state court. (Court Doc. No. 1-1, Compl. ¶ 8.) TLH's insurer, Cincinnati Insurance Companies, defended TLH in that action under a reservation of rights. (*Id.* ¶ 12.) The lawsuit was submitted to arbitration and the arbitrator issued a decision and award on September 10, 2004. (*Id.* ¶ 13; Court Doc. No. 1-6, Decision & Award.) This award was made into a Judgment against TLH by the Wisconsin state court on December 16, 2004. (Court Doc. No. 28-5, *Smith v. Diversified Constr. Servs., Inc.*, No. 02-CV-252, slip op. (Wis. Cir. Ct. Dec. 16, 2004)).

The dispute between the Smiths and TLH derived from a purchase agreement regarding a log home. (*Id.* at 1.) Pursuant to a purchase agreement dated March 27, 2001, and effective on April 20, 2001, the Smiths agreed to purchase from TLH certain materials for the partial construction of a log home pursuant to schematic plans supplied by the Smiths and refined and adapted for the use of TLH products by TLH. (*Id.*) The log home was to be constructed from TLH's and other materials and according to TLH's plans by Diversified Construction Services, Inc. ("Diversified"). (*Id.*) TLH was merely a product supplier and Diversified was the builder. (*Id.*)

Paragraph 6 of the purchase agreement stated that "[a]ll log home packages of Seller [TLH] meet the structural requirements of most local building codes . . . ." (*Id.* at 1-

2.) The arbitrator concluded that the designs produced by TLH for the Smiths' home did not meet local building codes, primarily because of the deletion of two support poles/columns that should have been included. (*Id.* at 2.) The house was built according to the design produced by TLH, and as a result of the deletion of the two support poles/columns, there was substantial movement of the home, including numerous surface irregularities on the roof and a thrusting outward of the exterior walls. (*Id.*) The arbitrator found that the damage related to the roof design deficiency was $65,000 and the damage related to the thrusting outward of the walls was $30,000. (*Id.* at 3.)

The arbitrator also concluded that Diversified's work was defective in numerous respects and awarded the Smiths $44,000 related to those deficiencies. (*Id.* at 4-6.) Cincinnati Insurance Companies has already agreed to indemnify TLH for the $44,000 related to TLH's responsibility for Diversified's errors. (Compl. ¶ 17.)

### B. The Insurance Policies

Cincinnati Insurance Companies issued two insurance policies to TLH: a Commercial General Liability Coverage Form and a Commercial Umbrella Liability Policy.

## IV. ANALYSIS

### A. Applicable Law

In cases such as this, arising under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court must apply the choice of law rules of the state in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). In Tennessee, the law of the place where

a contract is made governs the construction and validity of the contract. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973).

The insurance contracts at issue in this case were issued by an agency located in Athens, Tennessee to TLH, whose principal office is also located in Athens, Tennessee. Accordingly, the contracts were made in Tennessee, and Tennessee law controls the construction and validity of the contracts. The parties do not dispute that Tennessee law should govern the Court's consideration of this case.

B.  **Interpretation of Insurance Policies**

Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 72 S.W.2d 1, 7 (Tenn. Ct. App. 1998). Terms in the contract should be given their natural and ordinary meaning and contracts should be interpreted as written. *Id.* Insurance policies should be construed as a whole in a reasonable and logical manner. *Setters v. Permanent Gen. Assurance Corp.*, 937 S.W.2d 950, 953 (Tenn. Ct. App. 1996).

Ambiguous insurance contracts, and in particular, ambiguous provisions limiting coverage, are construed in favor of the insured. *American Justice Ins. Reciprocal v. Hutchinson*, 15 S.W.3d 811, 815 (Tenn. 2000). The insurer bears the burden of showing that an exemption applies. *Interstate Life & Acc. Ins. Co. v. Gammons*, 56 Tenn. App. 441 (1966). "Exclusions should not be construed broadly in favor of the insured, nor should they be construed so narrowly as to defeat their intended purpose." *Standard Fire*, 972 S.W.2d at 8.

Plaintiff argues that it is not liable for the $95,000 property damage award against TLH because coverage is removed by exclusion K, "Damage to Your Product."[1] The parties do not dispute that the relevant language in exclusion K is identical in both the Commercial General Liability Policy ("CGL") and the Commercial Umbrella Liability Policy. (Court Doc. 51-2 at 6.) Accordingly, the Court will interpret the CGL policy with the understanding that its reasoning applies equally to the umbrella policy.

The CGL provides, in pertinent part:

> **2.    Exclusions**
> This insurance does not apply to:
> ...
> **k.    Damage to Your Product**
> "Property damage" to "your product" arising out of it or any part of it.

(Court Doc. 1-3 at 1-3.)

"Your Product" is defined as:

> a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
> (1)    You;
> (2)    Others trading under your name; or
> (3)    A person or organization whose business or assets your have acquired and
> b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

---

[1] Plaintiff also argues that exclusion L – "Damage to Your Work" applies. Because the Court finds that coverage is removed by exclusion K, however, it need not determine the applicability of exclusion L. *See Blake Industries, Inc. v. General Agents Ins. Co. of America*, 2000 WL 1031054, *3 (Tenn. Ct. App. July 27, 2000) (insurer need only establish that one exclusion applies).

-8-

> a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
> b. The providing of or failure to provide warnings or instructions.
>
> "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

(*Id.* at 11.)

In the underlying action, the arbitrator found that TLH had breached an obligation under its contract with the Smiths to ensure that its design of the Smiths' log home met the structural requirements of the local building codes. (Court Doc. 1-6 at 1.) He found that the "major problem was the deletion of two support poles/columns that should have been included" and attributed that problem to TLH's design plan. (*Id.* at 2.) The arbitrator also found that "[a]s a consequence of this under-design, there has been substantial movement of the building, including numerous surface irregularities on the roof and of perhaps greater concern, a thrusting outward of the exterior walls, especially in the rear of the house, apparently by as much as 2 inches." (*Id.*) He awarded the Smiths $95,000 against TLH as a result of the defective design plans. (*Id.* at 3.)

Plaintiff argues that the design plans "which were embodied in a written form undoubtedly constitute a good or product sold by [TLH]. Since the term also includes warranties or representations, both the defective designs and the consequences thereof would fall within this exclusion." (Court Doc. 28-1 at 10.) TLH claims that there was no defect to the design plan and therefore no defect to its "product." (Court Doc. 51-2 at 7.) TLH also argues that should the Court find that there was a defect in the design plan, any

such defect is not attributable to TLH because Dr. Smith insisted that TLH remove the two support poles from its proposed design. (*Id.* at 8.)

### 1. *Preclusive effect of arbitrator's findings*

The arbitrator in the underlying action found that TLH was liable for $95,000 worth of damage to the Smiths' home based on the "under-design" of the home. (Court Doc. 1-6 at 2-3.) In the instant action, TLH is arguing that it should not be held liable for the design plan of the Smiths' log home. TLH asks the Court to hold a full hearing to allow it to present evidence related to the evolution of the design plan. (Court Doc. 51-2 at 3-4.) Specifically, TLH contends that it proposed a design plan which included two additional support beams and that the proposed support beams were removed from the final design plan at the insistence of the Smiths. (*Id.* at 5.) It argues that the design plan that did not include the two support beams was actually the product of Dr. Smith and his architect and not TLH's product. (*Id.* at 12.)

The Court construes TLH's argument in the instant action as an attempt to relitigate the issue of liability for the design plan. Accordingly, the Court must determine whether such relitigation is permissible.

Whether an insurer has a duty to indemnify depends upon the "true facts" of the underlying case. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). In this instance, the underlying case was arbitrated, and the arbitrator's findings were adopted in an order by the Circuit Court for Marinette County, Wisconsin. (Court Doc. No. 28-5, *Smith v. Diversified Constr. Servs., Inc.*, No. 02-CV-252, slip op. (Wis. Cir. Ct. Dec. 16, 2004).) Thus, the facts as found by the arbitrator and adopted by the Wisconsin

state court form the "true facts" on which this Court must base its ruling on Plaintiff's Motion for Summary Judgment.

Moreover, the doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The purpose of collateral estoppel is "to conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions." *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998).

The Court must consider four factors when determining whether collateral estoppel applies: (1) whether the issues in the prior proceeding were the same as those raised in the present action; (2) whether the prior proceeding resulted in judgment on the merits; (3) whether the party in the present action was a party or in privity with a party to the prior action; and (4) whether there was full and fair opportunity to litigate the issue in the prior proceeding. *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563 (Tenn. Ct. App. 1991). In Tennessee, findings made by an arbitrator have the same binding effect as judicial determinations made by a court. *Turpin v. Love*, 1973 WL 16997, *4 (Tenn. Ct. App. Aug. 14, 1973); *see also Bright v. Spaghetti Warehouse, Inc.*, 1998 WL 205757 (Tenn. Ct. App. Apr. 29, 1998) (applying collateral estoppel when underlying action was resolved at arbitration).

In *Haulers Insurance Company, Inc. v. Burke*, 1997 WL 819929 (Tenn. Ct. App. Dec. 30, 1997), the insurer sought a declaratory judgment as to whether it had a duty to

indemnify the insured for damages arising out of an underlying tort case. The underlying tort case was tried to a jury and the verdict was appealed. On appeal, the court upheld the jury's factual finding that the insured had granted permission to a third-party to operate its automobile. In the subsequent declaratory judgment action, the insurer attempted to reargue the issue of permission. The court of appeals held that the insurer was estopped from relitigating the issue of permission under the doctrine of collateral estoppel. *Id.* at \*4. Other Courts have agreed with this conclusion. *See, e.g., DaimlerChrysler Ins. Co. v. Apple*, 2008 WL 963653, 8 (Tex. App. 2008) (where arbitrator found that insured was "vice-principal," court was bound by that finding in determining whether insurance coverage existed); *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Johnson*, 82 Pa. D. & C. 4th 23, 50 (Pa. Com. Pl. 2007) (court was required to accept decision of the arbitrator).

Here, it is undisputed that TLH was a party to the arbitration and that the arbitration resulted in a final judgment on the merits. Remaining for the Court's decision, is whether the issue here is the same as in the arbitration and whether TLH was afforded full and fair opportunity to litigate the disputed issue during arbitration.

The arbitrator concluded that TLH had "breached its obligation, set forth in paragraph (6) of the Agreement, to assure that 'all log home packages of [TLH] meet the structural requirements of most local building codes.' " (Court Doc. 1-6 at 1-2.) The arbitrator explicitly found that much of the damage to the Smiths' home was a consequence of the "under-design" of TLH's design plan and awarded the Smiths $95,000 against TLH. (*Id.* at 2-3.) These conclusions necessarily required the arbitrator to consider which party was at fault for the design plan. Had the arbitrator not found TLH liable for the

design plan, he could not have found that the plan's failure to meet the building code was a breach of contract by TLH.

Although the issue in the instant action is framed differently than it was during arbitration – whether the design plan is TLH's "product" compared to whether TLH was liable for the design plan – the Court finds that it is, in fact, the same issue. Thus, the Court finds that the first disputed factor weighs in favor of finding that TLH is collaterally estopped from relitigating liability for the design plan.

The arbitrator's written decision states that TLH's president presented evidence during the arbitration and took the position that "the major problem was the deletion of two support poles/columns that should have been included." (Court Doc. 1-6 at 2.) This explicit reference to TLH's president's contention shows that TLH had the opportunity to argue the issue of liability for the missing support poles in the underlying action. Accordingly, the Court finds that TLH was afforded full and fair opportunity to litigate the disputed issue, and that the fourth factor weighs in favor of finding that collateral estoppel bars TLH from relitigating liability for the design plan in the instant action.

Considering all of the above, the Court concludes that TLH is collaterally estopped from rearguing the issue of liability for the design plan. The Court is bound by the arbitrator's determination that TLH was liable for the design plan and that TLH was responsible for $95,000 worth of damage to the Smiths' home that resulted from the lack of support poles in the design plan.

TLH claims that it "never had the opportunity to explain or argue that any award in this lawsuit should be covered under the Insurance Policies." (Court Doc. 51-2 at 2.)

Although the arbitrator offered his opinion as to whether certain events would constitute an "occurrence" and a "product", he explicitly stated that he did not have any insurance policies before him and that none of his opinions as to coverage issues would be binding. (Court Doc. 1-6 at 6-7.) The Court's conclusion that TLH is estopped from rearguing liability for the design plan does not, therefore, preclude TLH from arguing that the $95,000 award is covered under the terms of the insurance policies. The Court must therefore determine whether the policies cover the $95,000 award against TLH.

### 2. *Is TLH's design plan a TLH's "product"?*

The policies define "your product" as a "good[ ] or product[ ], other than real property,[2] manufactured, sold, handled, distributed or disposed of by" TLH.

The common meaning of the term "goods" is "tangible or movable personal property other than money; esp., articles of trade or items of merchandise." *Black's Law Dictionary* 714 (8th ed. 2004); *see also* Tenn. Code Ann. § 47-18-103(5) (defining "goods" as "any tangible chattels" for purposes of the Tennessee Consumer Protection Act). The common meaning of the term "products" is "something that is distributed commercially for use or consumption and that is usu[ally] (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption." *Black's Law Dictionary* 1245 (8th ed. 2004).

Courts have held that goods and products, as these terms are commonly used in the standard CGL policy, are "some tangible or material units in which one trades. The

---

[2] While the actual log home itself would certainly qualify as "real property," the design plans for the home produced by TLH are not.

qualifying words 'manufactured, sold, handled or distributed' really do not broaden the ordinary meaning associated with those words, but limit 'goods or products' to those in which the insured trades or deals." *Paxton-Mitchell Co. v. Royal Indem. Co.*, 569 P.2d 581, 615-616 (Or. 1977); *see also Friestad v. Travelers Indem. Co.*, 393 A.2d 121 (Pa. Super. Ct. 1978) (the terms "goods" and "products" imply the creation of tangible items), *Kammeyer v. Concordia Tel. Co.*, 446 S.W.2d 486, 489 (Mo. Ct. App. 1969) ("goods or products" of the insured refers to "goods or products created or manufactured and placed in the ordinary channels of commerce" by the insured).

The Court finds that TLH's design plan is a "good or product" within the plain meaning of those terms. *See*, *e.g.*, *Westman Industries Company v. Hartford Insurance Group*, 751 P.2d 1242 (Wash. Ct. App. 1988) (design of a boathouse was part of a "good or product" of the insured). The written design plan produced by TLH for the Smiths' log home is a tangible article of trade. Moreover, a good or product is "handled" by a company if that company "deals or trades in" such good or product. *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 420 (5th Cir. 1982). TLH is in the business of producing design plans for log homes and therefore "handles" such design plans. Accordingly, the Court finds that TLH's design plan for the Smiths' home falls within the definition of "your product" in the CGL policy.

        3.    <u>*Does exclusion K apply?*</u>

The Court must now determine whether exclusion K applies so as to remove coverage for the $95,000 award under the policies. The policies state that coverage is

removed under exclusion K for "'[p]roperty damage' to 'your product' arising out of it or any part of it." (Court Doc. 1-3 at 3.)

It is undisputed that the "property damage" in this case is damage to the roof, a wall, and other parts of the Smiths' home. TLH's "product" is not, however, the home itself, but is only the design plan for the home. The property damage in this case is therefore not damage "to" TLH's product. *See Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 104 P.3d 997, 1004 (Kan. 2005) (where product was windows and none of the property damage claimed was damage to the windows, the "your product" exemption did not apply).

Exclusion K also applies, however, when the property damage "arises out of it or any part of it." The antecedent of the pronoun "it" in exclusion K is unclear. In *Blake Industries, Inc. v. General Agents Ins. Co. of America*, 2000 WL 1031054, *5 (Tenn. Ct. App. July 27, 2000), the Tennessee Court of Appeals interpreted an insurance policy exclusion that removed coverage for "'property damage' to 'your work' arising out of it or any part of it." The court held that the antecedent for the term "it" was "your work" and interpreted the provision to remove coverage for any property damage that arose out of the insured's work. Applying the reasoning in *Blake* to the instant exclusion, the Court interprets exclusion K to remove coverage for any property damage arising out of TLH's design plan or any part of TLH's design plan.

The property damage at issue in this case clearly arises out of TLH's design plan. The arbitrator found TLH liable for $95,000 in damages based on TLH's "under-design" of the Smiths' log home which caused damage to the roof and shifting of the exterior walls. (Court Doc. 1-6 at 2.) The arbitrator also awarded the Smiths $44,000 as a result of the

faulty construction work performed by Diversified, the contractor who actually built the log home. (*Id.* at 6.) These separate awards against TLH and Diversified show that the arbitrator explicitly determined what damage was attributable to the design of the home – the portion allocated to TLH – and what damage resulted from the improper construction of the home – the portion allocated to Diversified. Given the arbitrator's award, the Court concludes that exclusion K removes coverage because the arbitrator determined that the property damage arose out of TLH's product – the design plan.

The above interpretation of exclusion K comports with the general manner in which Tennessee courts have interpreted CGL policies. The "your product" exclusion is commonly referred to as one of the "business risk exclusions" and "[s]uch exclusions are designed to preclude coverage for risks that can be most easily avoided by the insured company itself." *United Capitol Ins. Co. v. Special Trucks, Inc.*, 918 F. Supp. 1250, 1257 (N.D. Ind. 1996). Liability insurance policies, such as the policy at issue here, are not intended to act as a warranty or to serve as a performance bond for the insured. *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). These policies "do[ ] not cover the accident of faulty workmanship but rather faulty workmanship which causes an accident." *Id.* (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 796 (N.J. 1979)).

The Tennessee Supreme Court has held that "the standard comprehensive general liability policy does not provide coverage to an insured-contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are the cost of correcting the work itself." *Vernon Williams & Son Constr., Inc. v. Continental*

*Ins. Co.*, 591 S.W.2d 760, 764 (Tenn. 1979). The underlying dispute in this case is clearly one for breach of contract. The arbitrator explicitly stated that TLH had "breached its obligation, set forth in paragraph (6) of the Agreement" to provide the Smiths with a log home design that met the structural requirements of the local building codes. (Court Doc. 1-6 at 1-2.) The arbitrator awarded damages directly related to the cost to fix the roof and to repair structural issues caused by the lack of the two support poles – both of which were attributed to TLH's defective design plan. (*Id.* at 3.) It is therefore apparent that, under Tennessee precedent, the policies at issue in this case do not provide coverage for the $95,000 award resulting from the breach of contract dispute between the Smiths and TLH.

Because Plaintiff has established that coverage is removed under exclusion K, the Court need not evaluate whether any other exclusion in the policies may apply. *See Blake Industries, Inc. v. General Agents Ins. Co. of America*, 2000 WL 1031054, *3 (Tenn. Ct. App. July 27, 2000) (insurer need only establish that one exclusion applies).

**V.    CONCLUSION**

For the reasons discussed above, the Court **DECLARES,** pursuant to 28 U.S.C. § 2201, that:

(1)    Policy number CPP 0697925 issued by Plaintiff Cincinnati Insurance Companies to TLH provides no coverage for the $95,000 damage award to Dennis and Laurie Smith against TLH;

(2)    The "property damage" that forms the basis for the $95,000 award against TLH "arose out of" TLH's "product" as those terms are defined by policy number CPP 0697925 and coverage is thus excluded under the policy;

(3)     Policy number CCC4466145 issued by Plaintiff Cincinnati Insurance Companies to TLH provides no coverage for the $95,000 damage award to Dennis and Laurie Smith against TLH;

(4)     The "property damage" that forms the basis for the $95,000 award against TLH "arose out of" TLH's "product" as those terms are defined by policy number CCC 4466145 and coverage is thus excluded under the policy.

The Court **ORDERS** that Plaintiff's Motion for Summary Judgment [Court Doc. 27] is **GRANTED**.  The Clerk shall close the case.

SO ORDERED this 25th day of July, 2008.

*/s/Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE